UNITED STATES COURT OF INTERNATIONAL TRADE

OM MATERIALS (SARAWAK) SDN BHD

                    Plaintiff,

v.                                                        Court No. 25-00130

UNITED STATES,

                    Defendant.

## COMPLAINT

Plaintiff OM Materials (Sarawak) Sdn Bhd ("OM Materials"), by and through its counsel, files this Complaint to challenge the unlawful decision by the Department of Commerce ("Commerce") to find certain alleged subsidy programs to be countervailable. Specifically, evidence on the record demonstrates that the following three programs cannot be found to be countervailable: (1) capital allowances on income tax under the Industrial Building Allowance ("IBA"); (2) land tax payments, or "quit rent" paid to the Sarawak Government on land; and (3) imported raw material duty exemptions as a Licensed Manufacturing Warehouse ("LMW"). Commerce's decision to find each of these programs countervailable is unlawful, divorced from the factual record, and irreparably harmful to the company. Had Commerce properly determined that these programs were not countervailable, the rate applicable to OM Materials would have been *de minimis* and Commerce would have had to terminate its countervailing duty ("CVD") investigation with respect to OM Materials. Plaintiff alleges and states as follows:

## ADMINISTRATIVE DETERMINATION TO BE REVIEWED

1.        Plaintiff seeks judicial review of the Final Determination issued by Commerce in the countervailing duty ("CVD") investigation of ferrosilicon from Malaysia (Case No. C-557-

829).  The period of investigation ("POI") was January 1, 2023, through December 31, 2023.

Notice of the final determination was published in the *Federal Register* on March 28, 2025.  *See*

*Ferrosilicon from Malaysia: Final Affirmative Countervailing Duty Determination and Final*

*Affirmative Determination of Critical Circumstances, in Part*, 90 Fed. Reg. 14,075 (Dep't of

Commerce, Mar. 28, 2025) ("Final Determination"); *see also* accompanying *Issues and Decision*

*Memorandum for the Final Affirmative Determination in the Countervailing Duty Investigation of*

*Ferrosilicon from Malaysia*, Case No. C-557-829 (Mar. 21, 2025) ("Final IDM").

2.     Commerce published the Order, based on the Final Determination, in the *Federal*

*Register* on May 20, 2025.  *See Ferrosilicon From Kazakhstan: Amended Final Countervailing*

*Duty Determination; Ferrosilicon From Brazil, Kazakhstan, and Malaysia: Countervailing Duty*

*Orders*, 90 Fed. Reg. 21,446 (Dep't of Commerce, May 20, 2025) ("Order").

## JURISDICTION

3.     The U.S. Court of International Trade has jurisdiction over this action pursuant to

19 U.S.C. § 1516a(a)(2)(B)(i) and 28 U.S.C. § 1581(c).

## STANDING

4.     Plaintiff is a Malaysian producer and exporter of ferrosilicon, the merchandise

subject to the Order at issue.  Plaintiff participated in Commerce's investigation that resulted in the

contested Final Determination by preparing and submitting information and argument on the

record, and by participating fully in an on-site verification of all submissions.  Plaintiff is therefore

an interested party within the meaning of 19 U.S.C. § 1516a(d) and 28 U.S.C. § 2631(c).

**TIMELINESS OF ACTION**

5.     Commerce published the Order in the *Federal Register* on May 20, 2025.  Plaintiff filed the Summons on June 20, 2025, within 30 days of the publication of the Order.[1]  Plaintiff files this Complaint within 30 days of the filing of the Summons.  Accordingly, Plaintiff has filed the Summons and Complaint within the time limits set forth in 19 U.S.C. § 1516a(a)(2)(A) and Rule 3(a)(3) of the Rules of the Court of International Trade.

**PROCEDURAL HISTORY AND BACKGROUND**

6.     Commerce's decision to countervail certain alleged subsidy programs despite record evidence showing that such programs were legally not countervailable is unsupported by substantial evidence on the record and otherwise not in accordance with the law as averred in Counts I through V set forth herein.

7.     On March 28, 2024, CC Metals and Alloys, LLC and Ferroglobe USA, Inc. (collectively "Petitioners") filed a petition for antidumping duty ("AD") and CVD measures on imports of ferrosilicon from Brazil, Kazakhstan, Malaysia, and Russia.  *See Ferrosilicon from Brazil, Malaysia, the Republic of Kazakhstan, and the Russian Federation: Petitions for the Imposition of Antidumping and Countervailing Duties Pursuant to Sections 701 and 731 of the Tariff Act of 1930, as Amended, on Behalf of CC Metals and Alloys, LLC and Ferroglobe USA, Inc.*, Case Nos. A-351-860, A-834-812, A-557-828, A-821-838, C-351-861, C-834-813, C-557-829, and C-821-839 (Mar. 28, 2024).

---

[1]     June 20, 2025 is the last day of the 30-day period following publication of the CVD Order because June 19, 2025 is a federal holiday.  *See* Rule 6(a)(1)(C) of the Rules of the Court of International Trade ("When the period is stated in days or a longer unit of time . . . include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.").

8.     Commerce initiated CVD investigations with respect to ferrosilicon from Brazil, Kazakhstan, Malaysia, and Russia on April 17, 2024.  *See Ferrosilicon from Brazil, Kazakhstan, Malaysia, and the Russian Federation: Initiation of Countervailing Duty Investigations*, 89 Fed. Reg. 31,133 (Dep't of Commerce, Apr. 24, 2024).  For Malaysia, Commerce initiated an investigation into 13 different programs that were alleged by Petitioners.  Ultimately, by the end of the investigation, Commerce reviewed 18 total programs.

9.     On May 3, 2024, Commerce selected OM Materials and Pertama Ferroalloys Sdn. Bhd ("Pertama") as the mandatory respondents in its CVD investigation.  *See* Memorandum from Suresh Maniam, Senior International Trade Compliance Analyst, Office I, AD/CVD Operations, to Scot Fullerton, Associate Deputy Assistant Secretary for AD/CVD Operations, *Countervailing Duty Investigation of Ferrosilicon from Malaysia: Respondent Selection*, Case No. C-557-829 (May 3, 2024).

10.     Commerce then conducted an individual investigation of OM Materials during which OM Materials submitted responses to all questionnaires issued and other relevant information required by Commerce.  *See* Letter from Baker McKenzie LLP to the Hon. Gina Raimondo, *Section III Response Part 1*, Case No. C-557-829 (Jun. 18, 2024) ("OMSA IQR1"); Letter from Baker McKenzie LLP to the Hon. Gina Raimondo, *Section III Response Part 2*, Case No. C-557-829 (Jun. 21, 2024) ("OMSA IQR2"); Letter from Baker McKenzie LLP to the Hon. Gina Raimondo, *Affiliation Supplemental Questionnaire*, Case No. C-557-829 (Jun. 28, 2024) ("Affiliation SQR"); Letter from Baker McKenzie LLP to the Hon. Gina Raimondo, *Second Supplemental Questionnaire Response*, Case No. C-557-829 (Jul. 17, 2024) ("OMSA SQR2 Part 1"); Letter from Baker McKenzie LLP to the Hon. Gina Raimondo, *Second Supplemental Questionnaire Response Part 2*, Case No. C-557-829 (Jul. 23, 2024) ("OMSA SQR2 Part 2");

4

Letter from Baker McKenzie LLP to the Hon. Gina Raimondo, *Third Supplemental Questionnaire Response*, Case No. C-557-829 (Aug. 9, 2024) ("OMSA SQR3"); Letter from Baker McKenzie LLP to the Hon. Gina Raimondo, *Fourth Supplemental Questionnaire Response*, Case No. C-557-829 (Aug. 15, 2024) ("OMSA SQR4"); Letter from Baker McKenzie LLP to the Hon. Gina Raimondo, *Fifth Supplemental Questionnaire*, Case No. C-557-829 (Aug. 23, 2024) ("OMSA SQR5"); Letter from Baker McKenzie LLP to the Hon. Gina Raimondo, *OMSA's Rebuttal Benchmark Submission*, Case No. C-557-829 (Aug. 27, 2024) ("OMSA Rebuttal Benchmark Submission"); Letter from Baker McKenzie LLP to the Hon. Gina Raimondo, *Sixth Supplemental Questionnaire Response*, Case No. C-557-829 (Aug. 29, 2024) ("OMSA SQR6"); Letter from Baker McKenzie LLP to the Hon. Gina Raimondo, *Seventh Supplemental Questionnaire Response*, Case No. C-557-829 (Aug. 30, 2024) ("OMSA SQR7").

11.    The Government of Malaysia also submitted information regarding the alleged subsidy programs. *See* Letter from the Government of Malaysia to the Hon. Gina Raimondo, *Countervailing Duty Investigation of Ferrosilicon from Malaysia: Submission of Questionnaire Responses from the Government of Malaysia*, Case No. C-557-829 (Jun. 19, 2024) ("GOM IQR1"); Letter from the Government of Malaysia to the Hon. Gina Raimondo, *Countervailing Duty Investigation of Ferrosilicon from Malaysia: Submission of Questionnaire Responses from the Government of Malaysia*, Case No. C-557-829 (Jun. 25, 2024) ("GOM IQR2"); Letter from the Government of Malaysia to the Hon. Gina Raimondo, *Countervailing Duty Investigation of Ferrosilicon from Malaysia: Submission of Supplemental Questionnaire Responses from the Government of Malaysia*, Case No. C-557-829 (Jul. 16, 2024) ("GOM SQR3").

12.    These submissions to Commerce included information related to the IBA, the Sarawak Government land tax, and the LMW imported raw material duty exemptions programs.

The submissions included an explanation of each alleged program, a description of the eligibility criteria for each alleged program, and disclosure of whether and how OM Materials and Pertama may have used the alleged programs.

13.    For the IBA program, OM Materials and the Government of Malaysia provided information showing that the IBA is broadly available, irrespective of the industry to which a company belongs, the region in which it operates, and whether the company exports its products. Indeed, both OM Materials and the Government of Malaysia explained that any owner/operator of an industrial building may claim allowances on their reported income taxes without application or approval. OM Materials and the Government of Malaysia also explained that the Government may verify the capital allowances claimed on the reported income taxes through a tax audit, but the use of the program was not monitored in any other way. OM Materials also provided its tax returns and additional documentation in support of its reported use of the alleged IBA program. The information, in total, showed that the IBA program was not specific under 19 U.S.C. § 1677(5A)(D), as a matter of law.

14.    For the Sarawak Government land tax, OM Materials, Pertama, and the Government of Malaysia provided information, including relevant legal authorities, that demonstrated the "land rent" charged by the Sarawak Government was a tax and not rent. OM Materials also provided documentation and details with respect to its land tax payments, and outlined how these land tax payments were in accordance with the Sarawak Land Code. The record shows that OM Materials paid the tax owed in full.

15.    OM Materials and Pertama also submitted relevant benchmark information to calculate a benefit for the Sarawak Government land tax program in the event that Commerce disagreed with the position that the land rent was a tax and not a provision of a good. All of the

6

information submitted supported a finding that OM Materials and Pertama did not benefit from any land tax exemption or reduction.

16.    For the imported raw material duty exemptions under the LMW program, OM Materials and the Government of Malaysia submitted information detailing the program and the system used to confirm what and how much of each input was consumed in the production of an exported product to affirm eligibility for the exemption.    OM Materials also provided documentation and details of its use of the exemptions during periods relevant for this CVD investigation.    These documents included license applications, program requirement details, monthly reports, and independent auditor reports.    These submissions clearly supported the position that the LMW raw material exemptions were duty exemptions for inputs used in the production of exported products that cannot be found countervailable.

17.    Although the record contained abundant support that proved the IBA, Sarawak Government land tax, and LMW raw material duty exemptions were not countervailable programs, Commerce nevertheless found all three programs to be countervailable and calculated subsidy rates for OM Materials in its Preliminary Determination published on September 10, 2024.  *See Ferrosilicon From Malaysia: Preliminary Affirmative Countervailing Duty Determination, Preliminary Affirmative Critical Circumstances Determination, in Part, and Alignment of Final Determination with Final Antidumping Duty Determination*, 89 Fed. Reg. 73,364 (Dep't of Commerce, Sept. 10, 2024) ("Preliminary Determination"); *see also* accompanying *Decision Memorandum for the Preliminary Affirmative Determination in the Countervailing Duty Investigation of Ferrosilicon from Malaysia*, Case No. C-557-829 (Sept. 3, 2024) ("Preliminary IDM").

18.    In its Preliminary Determination, Commerce found the IBA program to be *de facto* specific and therefore countervailable.  The *de facto* specificity determination was based entirely on the application of adverse inferences.  Commerce applied adverse inferences in response to the Government of Malaysia's alleged failure to provide a database that would identify all companies that claimed capital allowances under the IBA program.  *See* Preliminary IDM, at 9-10.  This decision was a misinterpretation of the record because no such database exists.

19.    Commerce also found the Sarawak Government land tax program to be countervailable in its Preliminary Determination as a result of a misinterpretation of the record.  Commerce interpreted the land tax paid to be rental payments for land-use rights and not property taxes.  *See* Preliminary IDM, at 21-22.

20.    Similarly, with respect to the LMW raw materials duty exemption, Commerce found the program to be countervailable because it found that the Government of Malaysia did not demonstrate it had in place and applies a system that is reasonable and effective to confirm which inputs, and in what amounts, are consumed in the production of exported product.  *See* Preliminary IDM, at 18-19.

21.    Commerce conducted on-site verifications of OM Materials' and the Government of Malaysia's responses in the investigation and issued its verification reports on November 22 and 25, 2024.  *See* Memorandum to The File from Suresh Maniam and Stefan Smith, International Trade Analysts, Office I, AD/CVD Operations, *Verification of the Questionnaire Responses of Government of Malaysia*, Case No. C-557-829 (Nov. 22, 2024) ("Government of Malaysia Verification Report"); Memorandum to The File from Suresh Maniam and Stefan Smith, International Trade Analysts, Office I, AD/CVD Operations, *Verification of the Questionnaire Responses of OM Materials (Sarawak) Sdn Bhd*, Case No. C-557-829 (Nov. 25, 2024) ("OM

Materials Verification Report").  During the verification of the Government of Malaysia's responses, Commerce elected not to verify information related to the IBA, the Sarawak Government land tax, and the LMW programs.  *See generally* Government of Malaysia Verification Report.  In contrast, Commerce verified OM Materials' responses with respect to the IBA, the Sarawak Government land tax, and the LMW programs.  *See* OM Materials Verification Report, at 8-15.

22.    On December 17, 2024, OM Materials submitted a case brief, detailing why Commerce's preliminary findings with respect to the IBA, the Sarawak Government land tax, and the LMW were unsubstantiated and inaccurate, and how the record showed that these three programs were not countervailable.  *See OM Materials' Case Brief*, Case No. C-557-829 (Dec. 17, 2024).  In its case brief, OM Materials addressed Commerce's misinterpretation of the Government of Malaysia's responses regarding the IBA program, and in doing so, explained why no database exists that would identify which parties claimed capital allowances under the program.  OM Materials also synthesized the record documentation which supported the fact that the Sarawak land tax is a property tax and not rent for land-use rights.  Furthermore, OM Materials showed how the Government of Malaysia applied a reasonable and effective tracking system for inputs to monitor duty exemptions for raw materials under the LMW program.  In addition to its explanations as to why the three programs are not countervailable, OM Materials also addressed in the case brief the benchmark used to calculate the benefit for the Sarawak land tax program in the event that Commerce continued to find the program to be a rental payment for land-use rights rather than a property tax.

23.    On December 30, 2024, OM Materials submitted a rebuttal brief.  *See OM Materials' Rebuttal Brief*, Case No. C-557-829 (Dec. 30, 2024).  In response to Petitioners'

arguments with respect to the alleged Sarawak Government land programs, OM Materials reiterated that the Sarawak land tax paid was not rent on land-use rights, but rather a property tax.

24.     Commerce then issued its Final Determination.  In its Final Determination, Commerce disregarded or rejected OM Materials' arguments with respect to the alleged IBA, Sarawak Government land tax, and LMW programs and did not make any changes to its findings from its Preliminary Determination.  *See* Final IDM, at 6-7.  Commerce therefore continued to find the three programs countervailable.  In doing so, Commerce failed to acknowledge or to afford any weight to evidence that detracted from its preliminary findings—evidence which showed that these three programs were not countervailable.

## STATEMENT OF CLAIMS

### COUNT I

25.     Paragraphs 1-24 are incorporated by reference.

26.     The application of adverse facts available in relation to the IBA program was unlawful and unsupported by substantial evidence on the record.

27.     Commerce either disregarded or misinterpreted evidence placed on the record by the Government of Malaysia.  Had Commerce considered this evidence and interpreted it correctly, it would have found no gaps in the record.

### COUNT II

28.     Paragraphs 1-24 are incorporated by reference.

29.     Commerce's decision to countervail against the IBA program based on a finding that the program is *de facto* specific is not supported by substantial evidence on the record and is otherwise not in accordance with law.

10

30.    Commerce relied entirely on adverse inferences to find that the IBA program was *de facto* specific.  However, evidence on the record showed that the IBA program is not *de facto* specific and that there were no gaps in the record related to this point warranting the application of adverse facts available.

## COUNT III

31.    Paragraphs 1-24 are incorporated by reference.

32.    Commerce's decision to countervail against the Sarawak Government land tax program was unlawful and unsupported by substantial evidence on the record.

33.    Commerce treated the alleged Sarawak Government land tax program as rental payments for land-use rights instead of a tax, and therefore applied the incorrect analytical framework for the program.  Commerce should have analyzed the program as a direct tax program under 19 C.F.R. § 351.509 and not a less-than-adequate-remuneration ("LTAR") program under 19 C.F.R. § 351.511.  Had Commerce applied the correct analytical framework, it could find no benefit.

## COUNT IV

34.    Paragraphs 1-24 are incorporated by reference.

35.    Even if Commerce's use of the LTAR analytical framework for the Sarawak Government land tax program was in accordance with law (which it was not), the benchmark data used to calculate OM Materials' benefit was unlawful and not supported by substantial evidence on the record.

36.    When selecting a benchmark, Commerce is obligated to select a reasonable benchmark that lacks distortive pricing.  *See* 19 C.F.R. § 351.511(a)(2)(i).  The benchmark used

by Commerce in the Final Determination was not reasonable because it included distortive

pricing that did not align with OM Materials' experience.

**COUNT V**

37.    Paragraphs 1-24 are incorporated by reference.

38.    Commerce's decision to countervail against the sales tax exemption for raw

materials under the LMW program was unlawful and unsupported by substantial evidence on the

record.

39.    Duty exemptions for inputs used in the production of exported products, such as

the ones afforded under the LMW program, are generally not countervailable as long as the

exemption extends only to inputs consumed in the production of exported product.  *See* 19 C.F.R.

§ 351.519(a)(1)(ii).  To demonstrate this limitation, Commerce requires the government in

question to have a reasonable and effective system in place to confirm that the inputs are

consumed in the production of the exported products based on generally accepted commercial

practices in the country of export.  *See* 19 C.F.R. § 351.519(a)(4)(i).

40.    The record demonstrated that the exemptions afforded to OM Materials' raw

material inputs extended only to those used to produce exported product and that the

Government of Malaysia had a reasonable and effective system in place to confirm that the

inputs are consumed in the production of the exported products.  Commerce nevertheless

disregarded this evidence and found that a reasonable and effective system was not in place.  In

doing so, Commerce found the sales tax exemption for raw materials under the LMW program to

be countervailable.  The record contradicts Commerce's findings.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

(A) Enter judgment in favor of Plaintiff;

(B) Declare Commerce's Final Determination unsupported by substantial evidence on

the record and otherwise not in accordance with law;

(C) Remand this matter to Commerce to issue a revised final determination in

conformity with this Court's decision; and

(D) Grant Plaintiff such additional relief as the Court may deem just and appropriate.


Dated: July 18, 2025                                   Respectfully submitted,

                                                       */s/ Christine M. Streatfeild*
                                                       Christine M. Streatfeild
                                                       Justin R. Becker
                                                       Lauren Shapiro
                                                       Baker & McKenzie LLP
                                                       815 Connecticut Avenue, N.W.
                                                       Washington, DC 20006-4078
                                                       Tel.: (202) 835-6111
                                                       christine.streatfeild@bakermckenzie.com

                                                       *Counsel to Plaintiff OM Materials*